## SOUTHERN RAILWAY CO. v. T. A. COWAN.

Eastern Section. September 24, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

George W. Gorrell, of Newport, for plaintiff in error.
J. Frank Park, of Jefferson City, for defendant in error.

SNODGRASS, J. This is an action brought before a Justice of the Peace of Jefferson county, for injuries sustained by a mule belonging to the defendant in error, while it was being loaded on the cars at Loudon, Tennessee, for shipment to Atlanta. Mr. Cowan shipped twenty-two mules from Jefferson City. The mules were to be stopped, taken off and fed at Loudon, Tennessee, where with five other mules from that point they were to be reloaded and continued on to their destination at Atlanta. They were taken off at Loudon and, on being reloaded, in consequence of a rotten and defective condition of a plank or board that goes from the chute up into the car, it was kicked or trodden out of place, or it had gotten out of place, and one of the

mules fell down between the pen and the car, or the chute and the car, and was severely injured.

The witness Huff examined the part of the chute board that was there after the mule fell, and said it was pretty rotten, and Huff said the agent told him not to say anything about it, the condition or shape the thing was in out there. This agent was a Mr. Campbell, depot agent. There was some incoherence in describing this defect. Witness Huff was asked:

"Q. You didn't have any accident in unloading them? A. No, but now in reloading them you see the mules kicked or shoved this plank —the piece that holds it that way, the pieces were rotten and it pushed it back.

"Q. The mules knocked or pushed it back? A. Yes.

"Q. That was on an incline? A. Yes, a little upgrade, and naturally pushed back a little.

"Q. And that let the mule down; when it broke it fell down between them? A. Yes."

There were several mules crowded in there, and this was the only one that fell. The plank was pushed back and reinforced and the loading finished. The witness further explained that in unloading a bunch of mules the first four or five will get in there and start to pushing and crowding, and you have to have somebody to knock them back into the end of the car before you can get them in; that they are difficult to handle, will crowd in there and stop up the hole and shove; that in the shoving and blocking of the way either that plank going from the chute over into the edge of the car slipped or broke something off, broke through the chute; it would not hold anything. The board that first slipped and caused the mule to fall had some cleats, but in the pushing and crowding around there it tore them off. Mr. Huff was then asked:

"Q. Is that the board you said awhile ago that was rotten? A. Yes.

"Q. And when you discovered that, why you got another board? A. Yes.

"Q. You got the other one, put it down and loaded the balance of the stock? A. Yes."

On further cross-examination he was asked:

"Q. Any way they pushed and shoved with enough force to tear off these cleats? A. Well, they were cleats across that way to keep them from slipping, and when they do that, and it being rotten too, it is pretty easy to get off."

The cleats are little pieces nailed across the rest of the board going from the chute into the car to keep the feet from slipping, and the mules crowded in with such force as to kick the cleats out. His cross-examination was thus continued:

"Q. I don't care anything about the cleats. What I want to know is, what is it that holds this thing in place, that is supposed to hold

it in place, a piece in there? A. Yes, there is supposed to be a piece in there, you turn it lengthwise that way back here and there is a piece nailed down here for them to come against, and that piece that was rotten you know, when it got started it come off. It was made short enough to where it would drop down over the end there was another piece on the bottom.

"Q. That was the second one? A. Yes.

"Q. And then because of the rotten condition when the mules were kicking against it it pushed the board back as I understand you? Yes.

"Q. And it fell down like this? A. Yes.

"Q. The mule fell down too? A. Yes.

"Q. Have you had experience in loading stock? A. Yes, a right smart.

"Q. Those mules were being loaded in the ordinary way? A. Yes.

"Q. And it was on account of this defective piece that was rotten that caused this mule to fall? A. I think so."

We think this evidence sufficiently established the negligence of the Railroad Company in the maintenance of this loading pen or chute. It had been in this condition for some time and was known to the defendant below. It was the railroad's pens and chutes that they had provided for the loading of stock, and it was their duty to maintain them in reasonably safe condition for such purposes. Timbers and supports that require such taxing should not be allowed to become rotten and unsound, and we think that allowing it to become and remain in this condition was negligence, and that the court was authorized to so find.

The question of contributory negligence was a matter also for the court, and of course the judgment is evidence the court did not find that there was any contributory negligence that would bar a recovery. It was shown that Huff, the agent of the defendant in error, had shipped stock or cattle from the pen or chute in question and was aware that it was in bad condition, but it had been found sufficient for his purposes, and he had determined to use it, as long as the railroad permitted it to be used, and it was a question for the court to say whether or not in using it under the circumstances he was guilty of such contributory negligence as would bar his recovery. As stated, he found that he was not, and we cannot say that there was but one conclusion that reasonable minds would have arrived at under the circumstances.

We do not think the regulations of interstate commerce cut any figure in this case, or that it would be material to consider the copy of the shipping contract which appears copied into the record, or as an original document sent up with the record. This paper was not read into the record, nor is it identified as an exhibit thereto. Therefore it does not appear to be a part of the record, but as stated, we

do not think it material. There was no question about the shipment of the mules, nor the authority to take them off and reload them at Loudon. There was no question about the injury to the mule, nor but what the injury was caused by the defective condition of this chute. The only question, therefore, that could be made, we think, was the question as to the contributory negligence of the shipper in using the chute, and as to the amount of the damages that might have been awarded. As stated, the judgment of the court concludes the question as to the contributory negligence, we think, and the evidence supports the amount of the damages allowed.

The assignments of error are therefore overruled and the judgment of the lower court affirmed, with costs against appellant.

Portrum and Thompson, JJ., concur.